Fannie J. Willard, Administratrix, Plaintiff in Error, v. The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, Defendant in Error.

### Gen. No. 15,345.

1. ASSUMPSIT—*when implied does not arise.* Held, under the evidence in this case, that an attorney employed by a railroad company upon a regular salary is not entitled to extra compensation for extraordinary services performed if they come within the line of his prescribed duties.

2. EVIDENCE—*when reference in letter cannot be explained.* A reference in a letter which has been written by a witness cannot be explained by him where there is no ambiguity as to what was referred to.

Willard v. Pittsburgh, C., C. & St. L. R. Co., 162 Ill. App. 427.

Assumpsit.   Error to the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1909.   Affirmed.   Opinion filed June 16, 1911.

PLINY B. SMITH, for plaintiff in error.

LOESCH, SCOFIELD & LOESCH, for defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

George Willard, deceased, brought assumpsit against the defendant in error in the Municipal Court of Chicago and declared upon a *quantum meruit* for certain services rendered by him as an attorney at law in the preparation for trial and the trial of a certain lawsuit which the defendant in error brought in 1895 against the city of Chicago to recover three-quarters of the value of a large amount of property which had been destroyed in the riots of 1894 in the city of Chicago.   In December, 1904, the suit, on motion of the defendant in error, was transferred from the Circuit Court of Cook county to the Circuit Court of Du Page county, Illinois, and trial was had in that court resulting in a verdict and judgment against the city of Chicago in favor of the defendant in error for $100,000.

The suit brought by George Willard, deceased, was tried in the court below and resulted in an instructed verdict, finding the issues for the defendant, on which a judgment was entered in the trial court.

The question involved in the case was whether the services sued for were covered by Willard's salary as counsel or solicitor for the defendant in error, or were services for which he was entitled to extra compensation.

The record shows the following material facts.   In 1904, and for many years previous, the plaintiff in error was in general practice as a lawyer in Cook county, Illinois, and was doing legal work for the defendant in error on a monthly salary.   He was known as the company's district solicitor for the district of Cook county.

In June, 1904, George Willard, deceased, was instructed by the defendant's general counsel, J. J. Brooks, to take steps to secure a speedy trial of the defendant in error's suit against the city of Chicago. In response to that letter Mr. Willard wrote Mr. Brooks that in view of existing conditions the defendant in error ought to take a change of venue to some other county, and, after some consideration, Mr. Willard was directed to proceed to make the necessary application for a change of venue. That application was accordingly made and resulted in the case being transferred to the Circuit Court of Du Page county, sitting at Wheaton, Illinois. Additional counsel was employed to assist Mr. Willard, at his request, and the case was tried at Wheaton, with the result above stated, Mr. Willard participating in the preparation and trial of the cause. For this service he claimed extra compensation in the trial court, and the questions there presented are by this proceeding brought before this court for review.

The record shows that Mr. Willard had been solicitor for the Pennsylvania Company and its underlying companies, of which defendant in error is one, for upwards of twenty-five years. The defendant in error paid Mr. Willard a salary of $225 per month for his services to that company, and the Pennsylvania Company paid Mr. Willard a salary of $225 per month for services rendered that company, making a total compensation paid by the Pennsylvania Company and the Pittsburgh Company of $450 per month. In 1892 these monthly salaries were increased respectively from $225 to $262.50, or a total of $525 per month. It appears that the duties of the solicitors, of whom Mr. Willard was one, were fixed by the by-laws of these companies respectively. The by-laws of the defendant in error were introduced in evidence and are as follows:

"First. The General Counsel shall have charge under the direction of the First Vice-President of the law business of the company and shall be located at the general office of the company in Pittsburgh.

Second. He shall be aided by two Assistant Counsel and

Solicitors, who shall be nominated by the General Counsel with the approval of the First Vice-President for confirmation by the Board.

Third. He shall keep himself advised of the character and progress of legal proceedings and claims by and against the company or in which it is interested. * * *

Sixth. All bills for expenditures incident to the management of the business of the Law Department and all bills involving the payment of money in connection with litigation in which the company is interested shall be certified by the proper solicitor and sent to the General Counsel for examination and approval before being paid.

Seventh. No suits shall be instituted by or in the name of the company, nor shall any suit wherein the company is a party to be compromised or settled, otherwise than in pursuance of the direction of the General Counsel and subject to the approval of the President, one of the Vice-Presidents or the Board.

Eighth. The General Counsel and Solicitors may at all times be consulted by the officers of the company and by the chairman of committees appointed by the Board, on all business requiring professional advice and when written opinions are given by solicitors the original or a copy of the same shall be forwarded to the General Counsel.

Tenth. The Solicitors shall keep in their respective offices a docket in which they shall record all proceedings connected with any action in which the Company is interested, and shall also keep such other records as may be necessary to preserve a complete history of the business of the Company intrusted to their charge; which docket and other records shall be the property of the Company, and shall, at all times, be subject to the inspection and control of the General Counsel. The Solicitors shall promptly notify the General Counsel of all suits that may be brought against the Company, and report in full to him all proceedings subsequently connected therewith. They shall represent the Company in all suits, and in other proceedings wherein their professional services may be required in their respective districts, wherein the Company is a party, or its rights or interests are involved. The salaries of the Solicitors shall be fixed, from time to time, by the Board, and shall cover all services necessary or rendered to the Company, and necessary or rendered to all

other companies owned or controlled by or in which, by reason of stock ownership, this Company is interested, or whose roads may be leased to or operated by it within their respective districts, as may be, from time to time, required of them by the Board, the President, the Vice-Presidents or the General Counsel.

Eleventh.   They shall, whenever requested by an officer of the Company, take immediate measures to investigate the facts and ascertain the legal position of the Company concerning any accident, claim or liability, and they shall, in such case, promptly do what may be required for the protection of the interests of the Company; but they shall conclude no contract otherwise than in consequence of the direction or subject to the approval of the President, one of the Vice-Presidents, the General Manager, or the General Counsel.

Twelfth.   The lines of railway controlled or operated by the Company shall, for the transaction of its law business, be divided into the districts hereinafter named, and the Solicitors of the respective districts shall be charged with the legal business thereof, and of such additional lines as may be from time to time assigned to them by the Board, the President, the Vice-President or the General Counsel.''

As solicitor for the defendant in error, Mr. Willard had charge of its legal work in Cook county.   During the months of June and July, 1894, certain property in the custody of the defendant in error as a common carrier was destroyed by rioters in its yards in Chicago, Illinois.   Action was brought by Mr. Willard on behalf of the defendant in error as its district solicitor in the Circuit Court of Cook county to recover damages for the destruction of the property.   He continued to be the regular solicitor for the defendant in error until the 15th day of June, 1906, when his services were dispensed with as such solicitor.   During his solicitorship he made no claim against the defendant in error for extra compensation in connection with the trial of the above mentioned case.   After his discharge he made the claim involved in this case for special fees for services performed in the preparation and trial of the riot case.   This claim was re-

432    APPELLATE COURTS OF ILLINOIS.

Willard v. Pittsburgh, C., C. & St. L. R. Co., 162 Ill. App. 427.

jected by defendant in error, and the action now being reviewed was commenced.

It is urged on behalf of the plaintiff in error, who was appointed administratrix of the estate of George Willard upon his decease, that the evidence in this case tends to show that from the beginning of Mr. Willard's relation as solicitor for the defendant in error, it was the mutual understanding between the parties that the salary was not to cover all legal services which the plaintiff might be called by the defendant to perform. By the by-laws above quoted it appears that the salaries of the solicitors were made to cover only such services on behalf of the company as were required of them within their respective districts, and such services as the company might require on behalf of other roads owned, leased, operated or controlled by the defendant in error within their respective districts, and it is claimed that certain cases are shown in the record wherein substantial services were performed by Mr. Willard and others which were paid for in addition to the salary paid to Mr. Willard, upon the theory and understanding that the work was outside of the district in which the solicitors were employed, or of unusual importance within the district, and that such work was not covered by the fixed salary.

It is also urged that the by-laws of the defendant in error, even if binding upon the plaintiff in error's intestate, do not preclude the plaintiff from recovering in the action under review, as they provided for solicitors representing the company only in suits and in other proceedings wherein their professional services may be required in their respective districts.

We have reviewed the by-laws carefully, and the evidence in the case, and upon careful consideration of the evidence, we are of the opinion that it fails to show that Mr. Willard was entitled to any extra compensation for the services sued for. It is undisputed that the litigation arose in the county of Cook, within the district which, under his general employment as solicitor, Mr. Willard was bound by his contract to represent the company and conduct its legal busi-

ness. In our opinion the mere fact that while the cause of action arose in the county of Cook and the action was originally brought in the county of Cook, its subsequent transfer on application of the defendant in error and under the advice of Mr. Willard to Du Page county for trial, forms no basis for the claim for extra services. While it is true that it was more inconvenient for Mr. Willard to prosecute the suit in Du Page county than in the city of Chicago, that inconvenience alone does not take the case out of the contract existing between Mr. Willard and defendant in error, and does not afford any basis for a claim for extra compensation. It appears that in addition to extra counsel employed and paid by the Pittsburg Company to assist Mr. Willard in trying the riot case, extra counsel were likewise employed and paid by that company to try cases in Cook county during the absence of Mr. Willard at Wheaton.

The evidence shows certain cases in which the defendant in error allowed special compensation for special services, but we do not regard those cases as simliar to the case under review, either in facts or principle, and we cannot regard them as facts or precedents which form any basis for an implied promise or undertaking on the part of defendant in error to pay special compensation for the services in question. We think the evidence explains the circumstances under which such extra compensation was paid, and the reasons why such cases were regarded as exceptional and special, and additional compensation was allowed therefor. We do not find in this record any reason or basis for holding that a contract existed, either express or implied, between Mr. Willard and the defendant in error to pay him an additional compensation for the services rendered in the riot case. The evidence shows that there was not at any time any promise or agreement to pay Mr. Willard additional or extra compensation for the services sued for. His expenses in going to and from Wheaton, Illinois, where the case was tried, were paid by the defendant in error; and the fact that Mr. Willard never made any claim or demand for extra compensation for trying the riot case indicates to our minds that he did not

at that time interpret the contract or arrangement between him and the company as forming the basis of any claim for extra compensation, but, on the other hand, that the contract between him and the company covered the trial of the riot case at Wheaton, for the very good reason that it arose in Mr. Willard's district and the suit was commenced in Mr. Willard's district and it was transferred to another county for trial solely as a means of securing a fair trial of a case which otherwise would have been tried in the county of Cook where the cause of action arose and the suit thereon was commenced.

It is urged that the court erred in sustaining an objection to a question asked of Mr. Willard, as follows:

"Q. In your letter of June 16, 1906, to Mr. Brooks, Exhibit 43, you state you were ready to go on and complete your contract with the Pennsylvania Company and the Panhandle Company, what contract do you refer to?"

We think the court did not err in sustaining the objection, for the reason that the letter of Mr. Willard to Mr. Brooks as general counsel explicitly states what contract it refers to, and leaves no question or doubt upon that subject.

We do not think the court erred in excluding the evidence produced and directing a verdict for the reason that the evidence did not show a cause of action in favor of Willard's administratrix and against the defendant in error.

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*